**Donald WILLIAMS, Appellant,**

v.

**Luther D. ROBINSON, Acting Superintendent of Saint Elizabeths Hospital.**

**No. 23763.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 7, 1970.

Order Filed June 15, 1970.

Opinion Issued June 19, 1970.

Mr. Robert N. Sayler, Washington, D. C., with whom Mr. Herbert M. Silverberg, Washington, D. C., was on the motion, for appellant.

Mr. Broughton M. Earnest, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the motion, for appellee.

Mr. Charles R. Halpern, Washington, D. C., filed a brief for the Medical Com-Zwerling, M.D., Ph.D., as amici curiae, mittee for Human Rights and Israel urging reversal.

On Appellant's Motion for Summary Reversal and Appellee's Motion for Remand

Before BAZELON, Chief Judge, and WRIGHT, Circuit Judge.

BAZELON, Chief Judge:

We are presented in this case with important questions regarding the scope and procedures for judicial review of administrative decisions made by Saint Elizabeths Hospital. According to appellant's hospital records, in July of 1969 he was considered an admirable patient and was looking forward to an early release. On August 7, however, he was reported absent from his Industrial Therapy assignment and placed on unauthorized leave; when he was located several hours later, he was restricted to the ward.[1] One week later, he was transferred to John Howard Pavilion, the maximum security unit of the hospital,[2]

---

1. Testimony at the hearing below indicated that the hospital subsequently concluded that appellant had regularly been absent from his Industrial Therapy assignment for roughly two weeks prior to that date. The only information in the hospital records introduced below with regard to this claim is a statement in his Industrial Therapy performance report dated August 15, 1969, that he was "seen repeatedly" in the Nichols Building for several days prior to August 7.

2. For a description of John Howard Pavilion, see Covington v. Harris, 136 U.S.App.D.C. 35, 40–41, 49–54, 419 F. 2d 617, 622–623, 631–636 (1969). Ap-

upon the administration's *ex parte* determination that on August 7 he had robbed an employe of $22 by threatening her with an icepick. Protesting his innocence, he wrote the Superintendent and asked an opportunity to show that he was in fact in class in Larch Ward at the time of the robbery; but although he was informed that the hospital was "attempting to gather information regarding your allegation," no further response was made and no hearing was ever held by the hospital. In the meantime, appellant remained in confinement in John Howard.

With matters in such a state, appellant filed the instant petition for habeas corpus in the District Court. In this petition, he did not seek to challenge the legality of his hospitalization at Saint Elizabeths. Instead, he contested only the decision to transfer him to maximum security at John Howard Pavilion, and his subsequent retention there.[3] Specifically, he argued that the basis for his transfer and retention was the disputed question of his perpetration of a robbery, and that the procedures used to resolve this question were not adequate to insure the accuracy of the determination; that in confining him to John Howard, the hospital failed to take into consideration all of the relevant medical and evidentiary information, and likewise failed to consider possible alternative dispositions less restrictive of his liberty and of greater therapeutic value; and that he is not receiving adequate treatment for his illness.[4] The District Court, after hearing, discharged the writ. On this appeal, appellant presses substantially the same questions urged

before the court below, and moves for summary reversal. While taking issue with most of appellant's points, the government suggests that the evidence below was insufficient to resolve the question of adequate treatment, and urges a remand for further hearing. For the reasons discussed below, we agree with appellant that the hospital records brought before the District Court failed to demonstrate an adequate basis for appellant's transfer, and that a transfer not based upon an adequate record is unlawful. There is some suggestion, however, that not all of the relevant hospital records were before the District Court. Although, as the government admits, it must bear the ultimate responsibility for producing these records, our prior cases have not made their essential nature in cases such as the present one entirely clear. Accordingly, we remand the case to the District Court for the purpose of allowing the government, should it desire, to introduce further hospital records that would establish the legality of appellant's transfer and retention in John Howard Pavilion.

## I.

■■ We begin with the proposition, well established in our cases, that within broad limits the place and manner of confinement at Saint Elizabeths Hospital, and the treatment to be received by each individual patient, are matters properly committed to the discretion of the hospital administration.[5] Unlike the question of eligibility for unconditional release, a question which requires the application of a purely legal standard to facts developed primarily through medical expertise,[6] treatment and restraint

---

pellant was initially placed in Ward 11, the most restrictive ward, following his transfer. In January of 1970, five months later, he was transferred to Ward 5.

3. Appellant also sought to have references to the robbery removed from his hospital files.

4. Appellant also argued that the manner of his confinement in John Howard

Pavilion was such as to amount to cruel and unusual punishment.

5. Dixon v. Jacobs, 138 U.S.App.D.C. 319, 327–328, 427 F.2d 589, 597–598 (decided April 10, 1970); Covington v. Harris, *supra* note 2 at 39–42, 419 F.2d at 621–628; Tribby v. Cameron, 126 U.S.App. D.C. 327, 328, 379 F.2d 104, 105 (1967); Rouse v. Cameron, 125 U.S.App.D.C. 366, 371–374, 373 F.2d 451, 456–459 (1967).

6. *See* Dixon v. Jacobs, *supra* note 5 at 324 n. 17, 325, 427 F.2d at 594 n. 17, 595.

within Saint Elizabeths are subjects concerning which not only the relevant facts, but also the consequences that flow from those facts are the concern primarily of the doctors and administrators at the hospital.[7] Such decisions may be based on a variety of factors. Chief among these, of course, is the individual patient's need for treatment, for the "purpose of involuntary hospitalization is treatment."[8] "Continuing failure to provide suitable and adequate treatment cannot be justified by lack of staff or facilities."[9] Within these limits, however, "[w]hile the individual may bring the matter to court," the reviewing court must "recognize the responsibility the law places upon those in charge of the institutions."[10]

 In deference to the administrative judgment, judicial review of the merits of internal hospital decisions is strictly limited. "We do not decide whether [the hospital] has made the best decision, but only make sure that it has made a permissible and reasonable decision in view of the relevant information and within a broad range of discretion."[11] But deference to administrative discretion imposes a concomitant judicial duty to insure that the hospital's expertise was actually brought into play. Long experience with judicial review of administrative action has set the standards for performance of that duty. The agency must show the information upon which it relied in reaching its decision,[12] and explain the course of reasoning by which the result was reached.[13] Where the action challenged rests upon the determination of a disputed issue of fact, it must be able to point to procedures giving the individual affected a fair opportunity to challenge that determination,[14] and providing reason-

7. The administrators and doctors, of course, must stay within relevant statutory and constitutional bounds. *See, e. g.*, Rouse v. Cameron, *supra* note 5; Miller v. Overholser, 92 U.S.App.D.C. 110, 206 F.2d 415 (1953).

8. Rouse v. Cameron, *supra* note 5 at 367, 373 F.2d at 452; *see* Covington v. Harris, *supra* note 2, 136 U.S.App.D.C. at 43–44, 419 F.2d 625–626.

9. Rouse v. Cameron, *supra* note 5 at 372, 373 F.2d at 457. As we said in a similar context in Doe v. General Hospital, 140 U.S.App.D.C. ——, ——, 434 F.2d 427, 433 (No. 24,011, decided May 15, 1970):

> Even if the * * * hospital's resources are seriously overburdened, the court cannot for that reason refuse to inquire into an allegation of illegal conduct. The hospital may be unable to fulfill its obligation [of care] without affirmative action by the legislative or the executive branch, appropriating or reallocating funds for the purpose. But that is no reason for the court to refrain from declaring that the obligation exists even though persons beyond the reach of the court prevent its discharge.

Compare the *Report* of the Ad Hoc Committee for the Evaluation of Security Programs and Facilities at Saint Elizabeths Hospital, excerpted in Covington v. Harris, *supra* note 2 at 53, 419 F.2d at 635:

> Where available resources fall below the standards acceptable to the individual clinician, he should communicate the realistic needs of the situation to the proper authorities.

*See also* Willis v. Department of Conservation and Economic Development, 55 N.J. 534, 264 A.2d 34 (decided April 20, 1970).

10. Covington v. Harris, *supra* note 2 at 47, 419 F.2d at 629 (Fahy, J., concurring).

11. Tribby v. Cameron, *supra* note 5 at 328, 379 F.2d at 105.

12. *See, e. g.*, United States v. Chicago, M., St. P. & P.R.R., 294 U.S. 499, 55 S.Ct. 462, 79 L.Ed. 1023 (1935); Saginaw Broadcasting Co. v. FCC, 68 U.S.App. D.C. 282, 96 F.2d 554, cert. denied, Gross v. Saginaw Broadcasting Co., 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391 (1938); United States v. Forness, 125 F.2d 928 (2d Cir.), cert. denied, City of Salamanca v. United States, 316 U.S. 694, 62 S.Ct. 1293, 86 L.Ed. 1764 (1942).

13. Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941).

14. *See* Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Londoner v. City & County of Denver, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103 (1908).

**642**

able assurance that the determination is correct.[15] Unless this can be shown, the action may not be sustained.

## II.

■ We turn now to consider the record upon which judicial review of internal hospital decisions should be based. *De novo* review of agency action is not usual in our jurisprudence.[16] Where a party to an administrative dispute has been given a fair opportunity to present evidence and make his contentions in administrative proceedings, with rare exceptions he will be bound by the record there made.[17] Similarly, since a primary function of judicial review of administrative action is to insure the integrity of the decision-making process, and not merely to examine the correctness of the particular decision at issue,[18] the agency may not support its decision by reference to facts outside the administrative record or a course of reasoning disclosed for the first time in judicial proceedings. As the Supreme Court said almost thirty years ago,

> [Agency] action must be measured by what the [agency] did, not by what it might have done. * * * [It] cannot be upheld merely because findings might have been made and considerations disclosed which would justify its order * * *.
>
> * * * [T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained.

"The administrative process will best be vindicated by clarity in its exercise." [19]

■ We believe that these considerations apply with equal force to proceedings seeking to test the propriety of internal hospital decisions with regard to the manner of confinement and the adequacy of treatment being received by the patient. In enacting the Hospitalization of the Mentally Ill Act of 1964,[20] Congress has provided for the creation of precisely the sort of records upon which judicial review must be based. Section 9 of the Act, 21 D.C.Code § 562 (1967), provides *inter alia:*

> The administrator of each public hospital shall keep records detailing all medical and psychiatric care and treatment received by a person hospitalized for a mental illness and the records shall be made available, upon that person's written authorization, to his attorney or personal physician.

We have already had occasion to note that "[o]ne plain purpose of the statutory records requirement is to facilitate judicial review of the care and treatment accorded the patient." [21] Accordingly, we hold that except as noted below, when a patient at Saint Elizabeths seeks to challenge the legality of hospital decisions regarding the treatment accorded him or the manner of his confinement, the hospital may not rely upon information or explanations not in the patient's hospital record to justify its decision. On their face,[22] the records must be adequate to demonstrate the

15. *Cf.* United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).

16. *See* 1 K. Davis, Administrative Law Treatise § 7.10 (1958).

17. Occasionally, developments subsequent to the administrative determination may warrant the presentation of additional factual material.

18. *See* L. Jaffe, Judicial Control of Administrative Action 589 (1965).

19. SEC v. Chenery Corp., 318 U.S. 80, 93–94, 63 S.Ct. 454, 87 L.Ed. 626 (1943), quoting Phelps Dodge Corp. v. NLRB, *supra* note 13, 313 U.S. at 197, 61 S.Ct. at 845.

20. 21 D.C.Code § 501 *et seq.* (1964).

21. Covington v. Harris, *supra* note 2 at 44, 419 F.2d at 626. We there held that, regardless of the patient's consent, the records may be introduced by the hospital if the patient contests his confinement on habeas corpus.

22. Explanation of psychiatric terminology or abbreviations used in the records is, of course, appropriate.

propriety, under the standards set forth above,[23] of the challenged decision. If the records are not adequate on their face, they may not be rehabilitated by a subsequent demonstration in court.

■ The hospital, of course, has control over its own records; it may include therein such material and arguments as it desires. We have on several occasions urged the hospital to define and implement procedures whereby patients dissatisfied with the hospital's action would be afforded the opportunity to present their grievances to the hospital administration for review.[24] Given mechanisms adequate to insure a complaining patient a fair opportunity to place facts and arguments supporting his position in the administrative record,[25] we might well be able to conclude that the patient, as well as the hospital, could be bound by the record made in the administrative proceedings. If so, the process of judicial review would be greatly simplified and the burden on doctors and hospital administrators, who would no longer be required to come to testify in court on these proceedings, would be substantially reduced.

However, we have seen nothing that gives the slightest indication that any such mechanisms are available.[26] Until the hospital can demonstrate their existence and adequacy,[27] the patient must be allowed the opportunity to show, by reference to evidence outside the hospital records, that even a decision proper on the face of those records did not meet the applicable standards.[28] And of course, if the patient relies upon evidence outside the face of the hospital records, the hospital may rebut his showing by going beyond the record as well.[29]

### III.

There remains the application of the foregoing principles to the present case, as well as the question of remedy. The matter was heard below on the theory, supported by the hospital records introduced, that appellant's transfer to John Howard Pavilion was based on a decision reached the day of his transfer and not subsequently reexamined.[30] According to testimony at the hearing before the District Court,[31] but not according

---

23. Text accompanying notes 12–15 *supra*.

24. Dixon v. Jacobs, *supra* note 5 at 324, 427 F.2d at 597–598; Covington v. Harris, *supra* note 2 at 39–40, 419 F.2d at 621–622; Bolton v. Harris, 130 U.S.App. D.C. 1, 11 n. 58, 395 F.2d 642, 652 n. 58 (1968); Rouse v. Cameron, *supra* note 5 at 371 n. 22, 373 F.2d at 456 n. 22 (1966).

25. *See* Dixon v. Jacobs, *supra* note 5 at 324, 427 F.2d at 600 for a discussion of adequate opportunity in the special context of the mentally ill.

26. Appellant's request for a hearing to present his side of the story went unfulfilled in the present case. *See* page 640 *supra*.

27. *Cf.* Dixon v. Jacobs, *supra* note 5 at 324, 427 F.2d at 599–600.

28. Of course, if the decision is not proper on the face of the records the patient need show nothing more.

29. We are not, in this regard, speaking of evidence merely explanatory of psychiatric terminology or abbreviations used in the records. See note 22 *supra*.

30. The only records introduced that seem to bear upon appellant's present confinement in John Howard are two reports from the hospital's security force detailing their investigation of the robbery and their conclusion that appellant was the perpetrator; and a brief memorandum regarding appellant's transfer by Dr. Mario Ordonez. The latter memorandum reads, in full:

 TRANSFER TO JOHN HOWARD DIVISION

 This patient was positively identified by a housekeeping employee who was threatened with an icepick over her eye last Friday. The patient is being transferred today with the approval of Dr. Shaffner, acting clinical director, and Dr. Platkin. Details to follow.

 No further details followed in any of the records introduced below.

31. The doctor who testified was the physician to whom appellant was assigned upon his arrival at John Howard. He admitted that he had not made the decision to transfer appellant.

to the records introduced,[32] the decision was based upon a determination that appellant had committed the robbery of which he was suspected; that he had several times eloped from West Side Service; that adequate treatment for his illness would be available for appellant in John Howard Pavilion; and that any possible limitations on treatment available there for appellant were justified by the necessity to protect other patients and employees from possible physical violence.

On this appeal, however, the government represents that the evidence introduced below was misleading and incomplete. Admitting, as appellant has maintained, that the initial decision to transfer him to John Howard Pavilion was based solely on the determination that he was the perpetrator of the robbery, it seeks to justify this transfer not as a final determination but as an emergency measure necessary in the interests of hospital security. It seeks a remand to give it the opportunity to show that appellant's retention in John Howard Pavilion is the consequence of a second decision, made two weeks later. This decision, the government maintains, should be the appropriate focus of judicial concern; and it offers on remand to show that this decision represents a

proper application of hospital expertise to the facts regarding appellant's condition.

 Since the importance, for purposes of judicial review, of appellant's hospital records may not heretofore have been sufficiently clear,[33] we believe that the government is entitled to a remand in order that it may introduce any of appellant's hospital records not previously brought forward. We are constrained to note, however, that absent additional material the hospital records shown in this case are clearly insufficient to support appellant's confinement in John Howard. We may well believe that the evidence of appellant's perpetration of the robbery was sufficient to support an interim determination that hospital security required his prompt transfer to John Howard.[34] But in a matter as serious as this, elementary considerations of due process require that, when the need for immediate action is past, appellant be afforded some reasonable opportunity to test the evidence against him and present his side of the story.[35] The hospital records are bare of any indication that such an opportunity was available.[36] Similarly, we have searched the records in vain for anything that could be described as an adequate plan of treatment;[37] and al-

32. See note 30 supra.

33. But see Covington v. Harris, supra note 2 at 44, 419 F.2d at 626. In Tribby v. Cameron, supra note 5, we explicitly analogized proceeding such as the present one to normal proceedings for review of agency action.

34. In this respect, without implying that the standards for agency action must be identical, an emergency transfer may be likened to emergency, temporary detention under 21 D.C.Code, §§ 521–28 (1967).

35. See In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). We reach this conclusion not because of any criminal or quasi-criminal characterization of the conduct at issue, but rather because it is a disputed issue of fact which, the hospital admits, played a

substantial part in the decision to transfer and retain appellant in John Howard Pavilion.

36. We need not now rule on the precise scope of the hearing required. We note in this regard that appellant has cited us to a deposition of James V. Bennett, former director of the United States Bureau of Prisons, filed in Mason v. Peyton, Civ.No. 53–69–R (E.D.Va.), which appellant states indicates that
revocation of early release for "good time" must be preceded by a hearing at which the prisoner, represented by a member of the institutional staff, has the right to present evidence, to call witnesses, to confront his accuser and to cross-examine adverse witnesses.

37. Compare the Report of the Ad Hoc Committee for the Evaluation of Security Programs and Facilities at Saint Elizabeths Hospital, excerpted in Cov-

though the records do contain repeated evaluations of appellant's continuing progress, their descriptions of the psychiatric care he has been receiving are kindly described as sparse.[38]

■ Unless the government, on remand, can introduce sufficient additional hospital records to justify the decision to retain appellant in John Howard Pavilion, that decision must fail as unsupported by the record. Even if the government can produce records adequate on their face to justify the decision, appellant may go outside the records to establish his claim unless the hospital is able to demonstrate that he was afforded an opportunity to present evidence and argument for the record in internal hospital proceedings.[39] Unless the hospital's decision is justified under the standards here set forth, appellant must be returned to West Side Service.[40] The judgment of the District Court is reversed and the case remanded for further proceedings consistent with this opinion.

So ordered.

ington v. Harris, *supra* note 2 at 52–53, 419 F.2d at 634–635 :

7. *Individual Treatment Plan.* While we have not presumed to establish generalized clinical positions which might or might not be appropriate for a particular patient, we would affirm that:

 a. There should be a recorded assessment of the pathology and assets of the individual.

 b. There should be a recorded treatment plan.

 c. The treatment plan should be implemented in good faith within the limits of available resources.

 d. There should be a periodic recorded assessment of treatment progress or the lack of it.

 e. Significant modifications to the treatment plan and their rationale should be recorded.

 f. Where available resources fall below the standards acceptable to the individual clinician, he should communicate the realistic needs of the situation to the proper authorities.

38. A report dated January 19, 1969, notes that the patient "has been active in a number of activities, has mastered all that the tailor's shop has to teach him" and that he "has been secretary of the PAC." A report made in January of 1968, before appellant's trial on criminal charges that resulted in his commitment to the hospital, detailed his physical ailments and the medication prescribed therefor. Two reports made during June of 1969 indicate that he had "made a good adjustment to" and "been elected chairman" of the "therapeutic community" in his ward on West Side ; that he "has started a rehabilitation program" and that he was busy sewing. Other than a diagnosis of passive-aggressive personality and drug dependence, we can see nothing in the hospital records introduced below even arguably descriptive of appellant's treatment.

39. If the hospital wishes to rely upon *ad hoc* procedures for each individual case, those procedures must be set forth in the records brought before the District Court. Should the hospital develop a formal system of procedures to deal with such situations, reference to a published set of procedural rules and an indication on the hospital records that those procedures were resorted to should suffice.

40. In the present case, the decision challenged is a decision to transfer appellant to a more restrictive and less desirable ward. Accordingly, if that decision is found to be deficient the appropriate remedy would be to undo its effects and order him returned to West Side. We therefore do not reach the difficult question of the relief that would be required if the records merely failed to justify the particular treatment being accorded appellant without indicating the proper remedy for the deficiency. *Compare* Rouse v. Cameron, *supra* note 5 at 373–374, 373 F.2d at 458–459.

Finally, we note that if appellant is returned to West Side Service, he may of course be returned to John Howard in accordance with proper procedures and within the allowable scope of the hospital's discretion.