Tommie **BROWN** et al., Plaintiffs,

v.

Dr. Edward **SCHUBERT**, Defendant.

No. 72-C-438.

United States District Court,
E. D. Wisconsin.

Jan. 27, 1975.

---

Corrections Legal Ser. by Anthony J. Theodore, Madison, Wis., for plaintiffs.

Bronson C. LaFollette, Wis. Atty. Gen. by Ward A. Johnson, Asst. Atty. Gen., Madison, Wis., for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This is a motion for summary judgment. The parties have stipulated with respect to the facts. I conclude that the plaintiffs' motion for summary judgment should be granted.

The plaintiffs were confined as patients at the Central State Hospital at Waupon, Wisconsin. On July 27, 1972, the defendant superintendent ordered them transferred from minimum security facilities to maximum security facilities after learning that they had mailed letters to a Madison Urban League official and a Madison newspaper reporter.

As a result of the ward transfers, the plaintiffs suffered the loss of various liberties and rights, including the loss of the physical amenities and freedom of movement enjoyed on the minimum security wards, and the loss of access to various forms of treatment which had previously been available. In addition, the defendant dismissed the plaintiff Howland from his position as an institution photographer and rescinded a favorable recommendation to the department of health and social services that Howland be transferred to Mendota state hospital. The defendant also ordered the censorship of all of the plaintiffs' mail. These disciplinary measures were taken without any notice or hearing.

The complaint alleges that the defendant, acting under color of state law, deprived the plaintiffs of the freedom of expression guaranteed to them by the first and fourteenth amendments as well as the rights to procedural and substantive due process guaranteed to them by the fourteenth amendment.

In a decision and order dated August 31, 1972, and reported at 347 F.Supp.

1232, 1234, I preliminarily enjoined the defendant "to restore each of the two individually named plaintiffs to the status and ward assignment he held before July 27, 1972 . . . ." In addition, the defendant was preliminarily enjoined "from censoring or interfering in any other way with said plaintiffs' correspondence, except that the right to inspect mail for contraband" was recognized within certain limits. Finally, I preliminarily enjoined the defendant

"from taking any punitive actions against the two named plaintiffs without first providing them with procedural due process . . . including a hearing . . . before an individual who was not involved in the transaction and who has not participated in an investigation of the charges. The patient is entitled to a reasonable advance notice of such hearing . . . .. A patient may present witnesses at such hearing and is entitled to confront and question his accusers. Finally, the hearing officer shall compose a short, written statement of his conclusions."

## I. PROCEDURAL DUE PROCESS

■ The defendant "concedes that the plaintiffs are entitled to a permanent injunction reflecting the procedural due process requirements enunciated" by the United States Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L.Ed.2d 935 (1974). Moreover, he states that "the principles apply not only to the named plaintiffs, but to the class they represent as well." While my preliminary injunction order dated August 31, 1972, provides that a patient "is entitled to confront and question his accusers," the defendant correctly reports the Supreme Court's observation in Wolff, at 568, 94 S.Ct. at 2980, that:

"We think that the Constitution should not be read to impose the [cross-examination] procedure at the present time and that adequate bases for decision in prison disciplinary cases can be arrived at without cross-examination."

The portion of the permanent injunction which will issue on behalf of the plaintiffs and their class concerning procedural due process requirements should be consistent with this language from Wolff, which indicates that cross-examination is not required at patient disciplinary hearings.

## II. FREEDOM OF EXPRESSION

■ The defendant has declined to comment with respect to the plaintiffs' contention that their conduct of mailing the letters in question constituted protected expression and that the defendant's subsequent attempts at censorship violated their first amendment rights. Perhaps this is because the facts of the case at bar are so similar to those which gave rise to the recent pronouncements of the Supreme Court in Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). In Procunier, the Supreme Court set forth a clear set of criteria for the review or censorship of prisoner or patient mail, at 413, 94 S.Ct. at 1811:

"Applying the teachings of our prior decisions to the instant context, we hold that censorship of prisoner mail is justified if the following criteria are met. First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements. Rather, they must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. Thus a restriction on inmate correspondence that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad. This

does not mean, of course, that prison administrators may be required to show with certainty that adverse consequences would flow from the failure to censor a particular letter. Some latitude in anticipating the probable consequences of allowing certain speech in a prison environment is essential to the proper discharge of an administrator's duty. But any regulation or practice that restricts inmate correspondence must be generally necessary to protect one or more of the legitimate governmental interests identified above."

At the time he ordered the disciplinary measures involved here, including the censorship of the plaintiffs' mail, the defendant indicated, among other things, that the plaintiffs' letters to the Urban League and to a newspaper reporter raised "a serious question of an attempt on the part of both Howland and Brown to foment unrest and riot at the institution." Having examined the letters involved, however, I am not convinced that the defendant's characterization is correct. The letters constitute the very type of protected expression contemplated by the Supreme Court in *Procunier*. In my judgment, the censorship provisions contained in my preliminary injunction order dated August 31, 1972, pertain also to the members of the plaintiffs' class and should be made permanent.

### III.  RIGHT TO TREATMENT

To the extent that such measures were unreasonable and unjustified, the plaintiffs claim that the ward transfers operated to deprive them of their right to treatment. The defendant urges that the transfers were therapeutic. The theory of "operant conditioning"—the regulation of conduct through a system of rewards and punishment—is advanced by the defendant as the therapeutic justification for the plaintiffs' transfers from pleasant minimum security honor ward surroundings to maximum security wards which are occupied by those individuals with only the most severe psychiatric problems.

Assuming *arguendo* that the plaintiffs had engaged in conduct deserving of discipline, such discipline must be consistent with their status as mental patients possessed of a right to treatment. The record indicates that from a diagnostic standpoint, the plaintiffs were model patients on July 27, 1972. Mr. Howland had recently received a favorable recommendation for transfer to a lesser security institution which offered certain therapy programs unavailable at Central State.

█ It is undisputed that by virtue of the ward transfers, the plaintiffs were deprived of various therapy opportunities. Certainly the plaintiffs could have been subjected to a system of rewards and punishments which was not inconsistent with their right to treatment. In this case, nothing of record demonstrates that the plaintiffs were in fact security risks or that they had been anything but eager, responsive participants in their various therapy programs. There is no rational relationship between the plaintiffs' conduct and their transfers to the maximum security wards. In my judgment, the ward transfers were unreasonable and arbitrary. They cannot be characterized as therapeutic measures which are consistent with these plaintiffs' right to treatment. See Williams v. Robinson, 139 U.S.App.D.C. 204, 432 F.2d 637 (1970). Accordingly, the plaintiffs' complaint of a substantive due process denial must be sustained. The parties have stipulated that the "defendant Schubert  .  .  . acted in good faith with respect to the plaintiffs Howland and Brown during the periods pertinent hereto." In addition, no special damages have been alleged or proved. Accordingly, I conclude that the plaintiffs are not entitled to recover special or punitive damages.

Therefore, it is ordered that the plaintiffs' motion for summary judgment be and hereby is granted. The plaintiffs'

counsel is directed to submit for the approval of the court a proposed order of judgment which is consistent with this decision and order. Such proposed order should also be submitted to the defendant's counsel for his approval as to its form only.