Howard L. MERLE, Appellant,

v.

UNITED STATES, Appellee.

No. 90–CO–471.

District of Columbia Court of Appeals.

Argued March 16, 1995.

Decided Sept. 30, 1996.

---

Kenneth H. Rosenau, Washington, DC, appointed by the court, for appellant.

Leslie A. Blackmon, Assistant United States Attorney, Washington, DC, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Robert A. Feitel, and Robert D. Okun, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, TERRY, Associate Judge, and BELSON, Senior Judge.

TERRY, Associate Judge:

This is an appeal from an order revoking appellant's probation. We are presented with three issues: (1) whether the trial court impermissibly considered its own recollection when deciding that appellant had violated the conditions of his probation, (2) whether the revocation of appellant's probation was barred by collateral estoppel, and (3) whether the court erred in refusing to consider appellant's mental illness as a defense to his alleged probation violations. We affirm the trial court's order.

I

Appellant was charged with various crimes in two separate cases: a 1984 case in which he pleaded guilty to a felony and was placed on probation ("the first case"), and a 1987 case in which he was charged with a number of violent felonies, but which was later dismissed after appellant was found mentally incompetent to stand trial ("the second case"). Appellant's probation revocation in the first case is the subject of the instant appeal.

In the first case appellant was initially charged with one count of taking indecent liberties with a minor child, based on an incident that occurred in August 1984. After a psychiatric screening, the court found that appellant was mentally competent to stand trial. Some time later, additional charges were filed against him, including five counts of assault with a dangerous weapon and one count of destroying property.

Appellant and the government entered into plea negotiations, and in due course appellant pleaded guilty before Judge Eugene Hamilton to one count charging assault with a dangerous weapon. At the sentencing hearing on February 14, 1986, the judge suspended the imposition of sentence and placed appellant on probation for five years. As a special condition of probation, appellant was ordered to remain a voluntary inpatient at Saint Elizabeths Hospital and not to leave the hospital "without medical advice and prior permission from the court."

Despite this condition, appellant left the hospital a mere five days later, on February 19, against medical advice and without the court's permission. He remained at large for more than a year until he was arrested on April 11, 1987, for committing a sexual assault on an eleven–year–old boy.

This incident led to the filing of an indictment in the second case, charging appellant with assault with intent to kill, armed kidnapping, assault with intent to commit sodomy, and sodomy. The new case was assigned to Judge Gladys Kessler. On January 26, 1989, after a hearing, Judge Kessler found appellant mentally incompetent to stand trial and remanded him into the custody of Saint Eliz-

abeths Hospital. On August 30, 1989, Judge Kessler dismissed the indictment in the second case without prejudice, after finding that there was "no likelihood" that appellant would regain his competency in the near future.

Meanwhile, in the first case, Judge Hamilton issued an order on May 1, 1987, directing appellant to show cause why his probation should not be revoked because of his failure to remain at Saint Elizabeths, as well as his commission of the crimes with which he was charged in the second case. The hospital initially reported that he was incompetent to participate in a probation revocation proceeding. Eventually, however, the hospital concluded that he had regained his competency, and on December 14, 1989, Judge Hamilton held a hearing in which he found appellant to be mentally competent. The judge then conducted a series of four hearings, extending into February 1990, to determine whether appellant's probation should be revoked.

Dr. James Fleming, appellant's primary treating physician at Saint Elizabeths, testified that appellant suffered from a variety of medical problems: manic depressive (bipolar) disorder, pedophilia, antisocial personality disorder, and diabetes. His mental disorders were being treated with Haldol, a standard medication.

With respect to appellant's departure from the hospital in February 1986, Dr. Fleming testified that appellant had initially left the hospital on a day pass to take care of some personal matters. Later that same day, however, he called Dr. Fleming and said that he would not be returning to the hospital. Dr. Fleming was unable to dissuade appellant from this course of action, even after informing him that unless he returned to the hospital, he would be in violation of the terms of his probation. Since appellant was a voluntary patient, Dr. Fleming had no authority to compel him to return. Thus, on February 20, 1986, appellant was officially discharged against medical advice.

Dr. Fleming stated that at the time of his admission and discharge, appellant was suffering from a bipolar disorder and schizo-

affective disorder, both in remission, along with alcohol abuse. The doctor also said, however, that a "second major diagnosis" was "malingering" because the bipolar disorder was "not in a full-blown state." Appellant complained to the hospital staff that he was having auditory hallucinations (hearing voices), but Dr. Fleming concluded that these complaints were merely "a way of getting into the hospital so that he would look better in front of the judge at the hearing." The doctor described appellant's behavior during his brief hospital stay as "hyperactive" and "euphoric," but "not overtly psychotic." Dr. Fleming also testified that in his opinion appellant had "a good understanding" of the conditions of his probation at the time of his admission to the hospital in February 1986. Furthermore, although appellant's poor judgment in refusing to return to Saint Elizabeths was to some extent the result of his mental impairments, Dr. Fleming opined that appellant "should have had the capacity to make the appropriate judgment" in compliance with the terms of his probation. The doctor was "actually quite surprised" when appellant decided not to return to the hospital on February 19.

A police detective testified about the events leading to appellant's re-arrest. On April 11, 1987, appellant approached an eleven-year-old boy and offered to pay him for assistance in finding a place to live. After the boy went with him to a rooming house where there were no vacancies, appellant and the boy went to a vacant house. When the boy tried to leave, appellant sexually assaulted him, tied his hands and feet, put a plastic bag over his head, and stabbed him in the neck. Both the boy and the proprietor of the rooming house later identified appellant from an array of photographs. Shortly after the police began to search for him, appellant turned himself in.

Before proceeding with his defense, appellant's counsel [1] expressly conceded that appellant had left the hospital on February 19, 1986, against medical advice and without court permission. Counsel argued, however, that this particular probation violation should

1. Appellant has newly appointed counsel on appeal.

be excused because it resulted from appellant's psychiatric infirmities.

Additionally, defense counsel focused on a variety of inconsistencies in a composite sketch which the police used initially to identify appellant as the assailant in the 1987 attack. In particular, counsel attempted to demonstrate that appellant had no large white patches of facial discoloration as shown in the drawing. In an exchange with the court, counsel asked the court to compare appellant's appearance with the sketch:

MR. JOHNSON [appellant's counsel]: ... We would ask the Court to look at Mr. Merle and see if the Court sees any splotches on his forehead, chin, cheeks—

\* \* \* \* \* \*

THE COURT: Mr. Johnson, we are talking about three years hence. I mean three years subsequent to the time in question in this case. And obviously, just from the passage of time, Mr. Merle does not look now exactly like he looked three years ago.

MR. JOHNSON: Maybe I can ask the detective about how Mr. Merle looked. Maybe I can ask the sergeant if Mr. Merle had the splotches on his face at his arrest.

THE COURT: Well, that would be one thing, Mr. Johnson, but of all the people in here who have previously seen Mr. Merle, I believe I have more experience in that category than anybody else has, with all due respect.

MR. JOHNSON: You have seen him a lot?

THE COURT: Yes, with all due respect to everyone else who might be in the courtroom. And Mr. Merle does not look anything now like he used to look like.

MR. JOHNSON: Can the Court tell me how he looks different?

THE COURT: He used to have white spots on his face.

MR. JOHNSON: He did?

THE COURT: Yes.

MR. JOHNSON: Well, that definitely surprises me. Whatever happened to those white spots?

THE COURT: I have no idea. He also used to have a patch of gray hair in his head, but I don't know where that is either.

MR. JOHNSON: May I ask the Court what type of white splotches Mr. Merle used to have on his face?

THE COURT: He used to have some white splotches. I don't know precisely what they were. I don't know what caused them or where they came from. I could not tell you that.

MR. JOHNSON: Were they in his forehead?

THE COURT: I couldn't tell you if they were in his forehead or not, but they were on and about his face. I don't know what they were called.

MR. JOHNSON: May I show the Court a copy ... of the exhibit? Would the Court look at the exhibit?

THE COURT: I couldn't tell you if they were as indicated in the exhibit or not, but I do recall that he had white splotches on his face, and I do recall that he had a white or gray patch of hair in his head.

MR. JOHNSON: Do you remember which side?

THE COURT: I don't know that either.

MR. JOHNSON: Just so we can exhaust the possibilities, does the Court remember or not whether Mr. Merle had a large white splotch on his chin back in—whenever the Court is talking about, '87 I guess?

THE COURT: I couldn't recall that either. I do know he had splotches on and about his face.

MR. JOHNSON: And not just freckles?

THE COURT: Not just freckles.

At the conclusion of the last day of hearings, the judge ruled that appellant had violated his probation by leaving Saint Elizabeths in February 1986 against medical advice, and by sexually assaulting an eleven–year-old boy in April 1987. The judge found beyond a reasonable doubt, "although that's not the standard that the court need apply in a situation like this," that appellant was "fully competent and capable of understanding and participating ... [in] these proceedings...." The judge also found that appellant was the perpetrator of the assault on the eleven–year–old

boy, relying on the identifications by the boy and the woman who owned the rooming house, and expressly disregarding his own recollection about appellant's appearance.

At a later date, Judge Hamilton sentenced appellant to two to ten years' incarceration for the 1984 assault with a dangerous weapon. Appellant then noted this appeal.

## II

██ In the first section of his brief, appellant makes two separate arguments, each with subparts. First, he contends that at the probation revocation hearing, the trial court improperly acted as a witness and deprived him of his right of cross-examination by recalling *sua sponte* appellant's past facial discolorations. In a corollary argument, appellant maintains that this conduct violated section 3(C)(1) of the American Bar Association's Code of Judicial Conduct. Next, appellant contends that the court's reference to certain letters sent to him by appellant constituted improper consideration of *ex parte* communications. Again, in a supplementary argument, appellant asserts that such conduct violated section 3(A)(4) of the Code of Judicial Conduct.[2] All of these arguments are *without merit.*

██ Initially, appellant complains that in the course of the hearing, the trial court essentially testified against him by recalling that he had white splotches on his face when he appeared before the court on prior occasions. These remarks, appellant argues, aided the court in improperly identifying him as the assailant, who was depicted in the police sketch (introduced into evidence at the hearing) as having such facial splotches.

██ This argument fails to consider that, when making its ruling, the court expressly stated that its finding that appellant was the assailant in the 1987 assault was based upon the photographic identification of appellant by the victim of the assault and another witness. Moreover, in finding that appellant was the perpetrator of the assault, the court said plainly that it did not consider its own recollection of appellant's past appearance. Even assuming that the judge's recollection was inadmissible, we have repeatedly held that judges in non-jury proceedings are presumed to ignore inadmissible evidence in reaching their decisions. *E.g., Moore v. United States,* 609 A.2d 1133, 1136 (D.C.1992); *Singletary v. United States,* 519 A.2d 701, 702 (D.C.1987). In the present case, that presumption is buttressed by the judge's own statement that his recollection of what appellant used to look like was irrelevant. Appellant has offered no acceptable reason for us to disregard this statement, and thus we deem it a sufficient basis for rejecting his argument.[3] For essentially the same reasons, we also reject appellant's argument that the judge violated section 3(C)(1) of the Code of Judicial Conduct. We cannot agree that the judge's recollection of appellant's prior appearance called his impartiality into question, especially when the judge expressly declined to consider it.

2. As appellant notes, the ABA Code of Judicial Conduct applies to judges of the District of Columbia courts. *See Scott v. United States,* 559 A.2d 745, 748 n. 6 (D.C.1989) (en banc). Section 3(C)(1) requires a judge to remain impartial during judicial proceedings; section 3(A)(4) forbids a judge to engage in *ex parte* communications.

3. We note, in any event, that even if the judge had relied on his own memory of appellant's past appearance, such reliance would not necessarily have been improper. Unlike a criminal trial, a probation revocation proceeding is "more in the nature of an administrative hearing intimately concerned with the probationer's rehabilitation." *Short v. United States,* 366 A.2d 781, 785 (D.C.1976) (citations omitted). "Consequently, the formal rules of evidence governing a criminal prosecution do not apply to a probation revocation proceeding." *Harris v. United States,* 612 A.2d 198, 201 (D.C.1992), *cert. denied,* 507 U.S. 1022, 113 S.Ct. 1826, 123 L.Ed.2d 455 (1993). In this context, all that is required to make evidence admissible is that it be reliable. *See Thompson v. United States,* 444 A.2d 972, 974 (D.C.1982) (citing *United States v. Winsett,* 518 F.2d 51, 55 (9th Cir.1975)). We have also held that once a judge determines that evidence proffered at a probation revocation hearing is reliable, that determination satisfies the requirements of the Confrontation Clause. *Harris, supra,* 612 A.2d at 202. Thus it is doubtful that the judge's reliance on his own recollection of appellant's past appearance exceeded the bounds of propriety. In light of our rejection of appellant's argument on other grounds, however, we need not decide this question.

█ Appellant also contends that, in finding him competent to participate in the probation revocation hearing, the judge improperly took note of certain letters that appellant himself had sent to the judge. The record makes clear that the judge referred to these letters in order to refute the assertions of defense counsel that appellant was incompetent. The letters revealed that appellant was fully aware that he had a case before Judge Hamilton and had been placed on probation in that case.[4] Appellant now maintains that these letters constituted *ex parte* communications with the judge, were never provided to defense counsel for review, and, as a result, were improperly relied upon as support for the judge's finding of competency. This argument is without merit. When a litigant communicates with the judge presiding over his case, there is by definition no *ex parte* communication as to that litigant. Since the letters at issue here were written by appellant himself, no *ex parte* communication occurred.[5]

█ But even assuming that the judge's consideration of the letters violated appellant's Sixth Amendment rights, any such violation was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The only use the judge made of the letters was to establish that appellant knew which judge was presiding over his case. They were relevant only to appellant's assertion that he did not know he was on probation to Judge Hamilton, but there was no evidence to support that assertion. Thus, regardless of the letters, the judge could not reasonably have found that appellant did not know which judge was in charge of his case at the time of the probation revocation hear-

ing. We see no prejudice here, or even any potential for prejudice.

Appellant's reliance on *Williams v. Robinson,* 139 U.S.App. D.C. 204, 432 F.2d 637 (1970), and *United States v. Morgan,* 185 U.S.App. D.C. 372, 567 F.2d 479 (1977), is misplaced. In *Williams* the court held that when deciding where to place a mental patient within a particular department at Saint Elizabeths Hospital, the hospital administrators were allowed to consider only the information contained in the patient's medical record at the time of the placement decision. *Williams,* 139 U.S.App. D.C. at 209, 432 F.2d at 642. In *Morgan* the court ruled that *ex parte* contacts between the defendant's treating psychiatrists at Saint Elizabeths and the prosecutor were a "potential impropriety," requiring prompt notification of the defendant's attorney. *Morgan,* 185 U.S.App. D.C. at 388, 567 F.2d at 495. The case before us, however, involves a trial court determination of a defendant's mental competency to participate in his own probation revocation proceeding. We see nothing in either *Williams* or *Morgan,* both of which involve communications with hospital psychiatrists, that would apply to any communication between the defendant himself and the judge assigned to hear his case.

### III

█ Appellant next argues that the court was collaterally estopped from finding him competent to participate in the probation revocation proceedings in this case because another judge of the Superior Court had previously found him incompetent to stand trial on criminal charges in a different case.[6] Aside from the fact that this argument is

---

4. It appears that at some time in the past appellant was on probation in another case before another judge. Defense counsel had maintained that one indication of appellant's incompetency was his confusion as to which judge was presiding over his case. The judge said in response, however:

> Now, Mr. Merle has always known who the judge was in at least one of his cases, and he has always been reasonably accurate about that. He has written to me on numerous prior occasions. He doesn't do that out of the clear blue sky. He writes to me because he knows

who I am and what I am, and all of his correspondence with me reflects that fact.

5. Because there was no *ex parte* communication, appellant's contention that the court violated section 3(A)(4) of the Code of Judicial Conduct is also meritless.

6. Appellant invokes the Double Jeopardy Clause of the Fifth Amendment, but primarily as support for his collateral estoppel argument. To the extent that he makes a separate double jeopardy claim, we find it without merit. *See Hardy v. United States,* 578 A.2d 178, 181 (D.C.1990).

plainly wrong, appellant is barred from even making it because he failed to preserve the collateral estoppel issue for appellate review.

Appellant contends that this issue was preserved on two separate occasions: first, during a status hearing in December 1988, when defense counsel asked the court to continue the probation revocation hearing in this case (the first case) until Judge Kessler had ruled on appellant's competency in the second case; and second, at the competency hearing in the first case on December 14, 1989, when counsel questioned whether it was lawful for the court to consider revoking probation after his arrest in the second case had resulted in his civil commitment.

Appellant fails to mention, however, that immediately after the continuance request in December 1988, defense counsel conceded that any competency ruling in the second case would have no binding effect upon the first case.[7] Additionally, at the hearing on December 14, 1989, rather than asserting that Judge Hamilton was bound by Judge Kessler's incompetency finding, defense counsel instead maintained that the court could not revoke appellant's probation after he had been civilly committed to the hospital. When pressed by the court, however, counsel conceded that he had no legal support for his position. He never brought the point up again, either then or at any future hearing.

We have consistently held that a party is prohibited from making one argument in the trial court and then presenting a contrary argument on appeal. *E.g., Brown v. United States,* 627 A.2d 499, 508 (D.C.1993); *Holmes v. United States,* 615 A.2d 555, 558 (D.C. 1992); *Byrd v. United States,* 502 A.2d 451, 453 (D.C.1985); *Hackes v. Hackes,* 446 A.2d 396, 398 (D.C.1982). In the present case, not only has appellant failed to preserve this issue for our review, but he has also failed to account for the fact that his present argument is contrary to the position he took below.

 In any event, even if the issue were properly before us, appellant's claim of error would still fail. A party raising a claim of collateral estoppel bears the burden of

showing that the present issues are identical to those adjudicated in a prior proceeding between the parties. *Halicki v. United States,* 614 A.2d 499, 502 (D.C.1992). Appellant has not met that burden—nor could he, for his competency to participate in the hearing before Judge Hamilton was altogether different from the issue before Judge Kessler when she found appellant incompetent in his other case.

 When reviewing a party's mental competency to participate in judicial proceedings, a court must focus on that party's *present* mental condition, not his condition at an earlier date. *See Bolton v. Harris,* 130 U.S.App. D.C. 1, 5, 395 F.2d 642, 646 (1968). As a result, a finding of mental competency (or incompetency) made after a hearing cannot be regarded as a final ruling that would raise the bar of collateral estoppel. Since a court in a competency hearing must determine the defendant's present competency—which is always subject to change—no ruling as to his competency to participate in future judicial proceedings can ever be final. *See In re Katz,* 638 A.2d 684, 688 (D.C.1994). Here, as in *Katz,* the issue before the trial court at the competency hearing in December 1989 was appellant's current mental condition, not his condition in January 1989 when Judge Kessler found him incompetent. Thus, even if appellant's collateral estoppel claim were properly before us, we would have to reject it.

## IV

Finally, appellant contends that his mental illness constituted a legal defense to his alleged probation violations. *See generally* Carroll J. Miller, Annotation, *Probation Revocation: Insanity As Defense,* 56 A.L.R.4th 1178 (1987). Since the trial court did not accept this argument, appellant maintains, the court abused its discretion in revoking his probation. Alternatively, appellant argues that his mental illness was a relevant mitigating factor which the trial court wrongfully ignored. We reject both contentions.

We address appellant's second argument first. The transcript clearly shows that the trial court extensively considered appellant's

**7.** Defense counsel made the same concession during another hearing in March 1989.

mental impairments before finding him competent. Such consideration is reflected not only in the court's detailed review of the testimony offered by Dr. Fleming during the hearing, but also in the court's weighing of various options which might minimize the negative impact of incarceration on his psychiatric treatment. Thus his assertion that the court ignored his mental illness is plainly refuted by the record.

Appellant's other argument, that his mental illness was a defense to his alleged probation violations, raises an issue of first impression in this jurisdiction.[8] As the government points out, however, other courts have generally held that mental illness does not constitute a defense in probation revocation proceedings. Citing case law from appellate courts in eight states[9] as well as the Fifth Circuit,[10] the government asserts that the rationale for these decisions is that the purpose of probation revocation is not only to protect the public but also to further the probationer's rehabilitation, not to determine legal responsibility. This court's decisions are, to some extent, consistent with that reasoning. *See Harris v. United States, supra* note 3, 612 A.2d at 201; *Short v. United States, supra* note 3, 366 A.2d at 785–786. On the other hand, the Supreme Court has held that if a probationer "has made all reasonable efforts" to comply with the conditions of probation "and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available." *Bearden v. Georgia,* 461 U.S. 660, 668–669, 103 S.Ct. 2064, 2070–71, 76 L.Ed.2d 221 (1983).[11]

■ We conclude that we need not decide this issue in this case. Even if we were to hold that a defendant alleged to have violated his probation may raise a claim of insanity at a probation revocation hearing, appellant could not avail himself of such a holding because he failed to establish that he was suffering from a mental illness at the time of the probation violation. His reliance on Judge Kessler's finding of incompetency in the second case is misplaced, for two reasons: first, because that finding was made in 1989, long after the 1986 and 1987 acts on which the revocation in the first case was based, and second, because Judge Kessler's finding of incompetency to stand trial does not establish a causal connection between his claimed mental illness and the commission of the acts which led to the revocation.

The order revoking appellant's probation is therefore

*Affirmed.*

8. *Carradine v. United States,* 420 A.2d 1385 (D.C. 1980), cited by appellant, does not stand for the proposition that mental illness may be relied upon as a defense to an alleged probation violation. In *Carradine,* while the defendant was complying with the terms of his probation, the trial court revoked the probation because it concluded that the defendant's mental state was deteriorating to the point that he posed a danger to society. This court reversed the order of revocation on the ground that, because there had been no specific violation of a condition of probation, the revocation was contrary to due process. *Id.* at 1390. Other issues related to the probationer's mental status, to the extent that they were even raised in *Carradine,* were left unresolved. *See id.* at 1390–1391 & n. 17.

9. *Trumbly v. State,* 515 P.2d 707 (Alaska 1973); *State v. O'Meal,* 116 Ariz. 307, 569 P.2d 249 (1977); *People v. Breaux,* 101 Cal.App.3d 468, 161 Cal.Rptr. 653 (1980) (collecting cases); *People ex rel. Gallagher v. District Court,* 196 Colo. 499, 591 P.2d 1015 (1978); *People v. Prusak,* 200

Ill.App.3d 146, 146 Ill.Dec. 733, 558 N.E.2d 696 (1990); *State v. Qualls,* 50 Ohio App.3d 56, 552 N.E.2d 957 (1988); *State v. Johnson,* 9 Wash. App. 766, 514 P.2d 1073 (1973); *State ex rel. Lyons v. Department of Health & Social Services,* 105 Wis.2d 146, 312 N.W.2d 868 (1981).

10. *Knight v. Estelle,* 501 F.2d 963, 965 (5th Cir. 1974), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2399, 44 L.Ed.2d 668 (1975) (insanity not a defense to charge of parole violation).

11. The Court also said, however:

We do not suggest that, in other contexts, the probationer's lack of fault in violating a term of probation would necessarily prevent a court from revoking probation.... Ultimately, it must be remembered that the [original] sentence was not imposed for a circumstance beyond the probationer's control "but because he had committed a crime."

*Bearden, supra,* 461 U.S. at 669 n. 9, 103 S.Ct. at 2071 n. 9 (citation omitted).